UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OLGA T. GRASSO,

      Plaintiff,

v.                     Case No. 8:13-cv-3186-T-33AEP

MICHELLE GRASSO, et al.,

      Defendants.

_____/

**ORDER**

This matter comes before the Court upon consideration of Plaintiff Olga T. Grasso's Motion for Attorney's Fees, Costs, and Prejudgment Interest (Doc. # 187), as well as Defendant Teresa Grasso's Motion for Entitlement to Attorney's Fees (Doc. # 191). Both Motions were referred to the Honorable Anthony E. Porcelli, United States Magistrate Judge. (Doc. # 192). After extensive briefing (Doc. ## 193, 195, 205, 206, 211, 212), Judge Porcelli entered his Report and Recommendation on October 21, 2016, (Doc. # 214).

In his Report and Recommendation, Judge Porcelli recommends that Olga's[1] Motion be granted in part; that Olga be awarded $110,789.37 in attorney's fees and $9,830.77 in

_____

[1] Because the parties share the same last name, the Court will refer to the parties by first named when required.

costs; that Olga be ordered to submit a calculation of the amount of prejudgment interest to which she is entitled within 10 days of the undersigned's ruling; and that Teresa's Motion be denied. (Id. at 19). Olga filed an objection to the Report and Recommendation on November 4, 2016. (Doc. # 215). Defendants Michelle Grasso and Teresa filed a reply to Olga's objection on November 22, 2016. (Doc. # 218). For the reasons that follow, the Court overrules Olga's objection; accepts the Report and Recommendation, albeit for slightly different reasons than those articulated by Judge Porcelli; grants Olga's Motion in part; denies Teresa's Motion; and awards $120,620.14, representing $110,789.37 in attorney's fees and $9,830.77 in costs, to Olga.

## I.   **Background**

Following the death of her husband, Olga moved to Oklahoma in order to stay with one of her sons, Joseph Jr. Grasso and his family. (Doc. # 185 at 3). While living in Oklahoma, Olga executed several estate planning documents; namely, a durable power of attorney, a revocable trust, a second revocable trust, and another durable power of attorney. (Id. at 5-6). Joe Jr. then died and, shortly thereafter, Olga's trust was amended so that it became irrevocable. (Id. at 6). After Joe Jr.'s passing, Olga

returned to Florida. (Id. at 7). While in Florida, Olga retained counsel and sought to have the estate planning documents she executed in Oklahoma terminated. (Id. at 7-8).

Olga filed suit against Margaret, her daughter-in-law via marriage to Joe Jr., and Michelle, her granddaughter and Joe Jr.'s daughter, on February 23, 2011, in the Sixth Judicial Circuit in and for Pinellas County, Florida. (Id. at 8). That litigation resulted in the termination of the trust created while Olga lived in Oklahoma. (Id.). The trial court in that litigation also entered an award of attorney's fees against Margaret and Michelle, in their individual capacities, which Margaret and Michelle appealed. (Id.).

In between the filing of Margaret and Michelle's appeal to the Second District Court of Appeal and the Second District Court of Appeal's decision, Olga filed a second action in state court, this time against Michelle and Teresa (another granddaughter of hers), on July 16, 2013. (Id.; Doc. # 1-1). Michelle and Teresa timely removed the second-filed action to this Court on the basis of diversity jurisdiction. (Doc. # 1). The case was stayed and administratively closed pending resolution of the state court proceedings (i.e., the appeal in the first-filed action). (Doc. # 26). On August 5, 2014, the parties filed a Joint Status Report indicating the

3

proceedings in the Second District Court of Appeal had concluded. (Doc. # 29). The Second District Court of Appeal reversed the trial court's award of attorney's fees against Margaret and Michelle, reasoning they had not been parties to the first-filed suit in their individual capacities. (Doc. # 185 at 9). This Court then reopened the instant case. (Doc. # 35).

Olga filed an Amended Complaint on December 3, 2014. (Doc. # 62). The Amended Complaint asserted five counts: Exploitation of the Elderly[2] (Count I); Civil Remedy for Exploitation of an Elderly Person (Count II); Breach of Fiduciary Duty (Count III); Constructive Fraud (Count IV); and Replevin (Count V). (Id.). Michelle and Teresa filed their Answer on December 31, 2014. (Doc. # 63).

Thereafter, Michelle and Teresa moved for partial summary judgment. (Doc. # 92). The Court denied the motion for partial summary judgment as to Olga's claim to attorney's fees arising from the first-filed action and as to Count I,

---

[2] Section 415.1111, Fla. Stat., actually provides a cause of action to a "vulnerable adult," which is "a person 18 years of age or older whose ability to perform the normal activities of daily living or to provide for his or her own care or protection is impaired due to a mental, emotional, sensory, long-term physical, or developmental disability or dysfunction, or brain damage, or the infirmities of aging," Fla. Stat. § 415.102(28).

but granted the motion for partial summary judgment as to Count III. (Doc. # 119). And, on the morning of trial, Olga orally moved to dismiss Count V, which the Court granted. (Doc. ## 157, 158, 159).

Trial proceeded as to the remaining Counts. (Doc. ## 153, 160, 161, 162, 164, 165). Michelle and Teresa moved for judgment as a matter of law at the close of Olga's case and they renewed their motion at the close of their case; the Court deferred ruling and submitted the case to the jury. (Doc. # 185 at 10). The jury returned a verdict on December 21, 2015. (Doc. # 167). Specifically, the jury found in favor of Olga, and against Michelle and Teresa, as to Olga's claim for exploitation under the Adult Protective Services Act (Count I). (Id. at 1-3). The jury awarded $127,669.64 to Olga against Michelle and $31,917.41 to Olga against Teresa. (Id. at 2-3). As to the remaining claims, the jury found in favor of Michelle and Teresa, and against Olga. (Id. at 4-9). After additional briefing (Doc. ## 163, 176, 179, 182), the Court denied Michelle and Teresa's motion for judgment as a matter of law. (Doc. # 185). Judgment was entered in accordance with the jury's verdict on March 31, 2016. (Doc. # 186).

Olga then filed her Motion for Attorney's Fees, Costs, and Prejudgment Interest (Doc. # 187), on April 14, 2016.

Teresa filed her Motion for Entitlement to Attorney's Fees (Doc. # 191), on the same day. Both Motions were referred to Judge Porcelli. (Doc. # 192). And, on May 3, 2016, Michelle appealed the Court's judgment. (Doc. # 196). While Michelle's appeal was pending, the parties extensively briefed their positions with respect to the Motions for fees and costs. (Doc. ## 193, 195, 205, 206, 211, 212).

Michelle voluntarily dismissed her appeal with prejudice on June 24, 2016. (Doc. # 213). Judge Porcelli subsequently entered the pending Report and Recommendation on October 21, 2016. (Doc. # 214). Judge Porcelli recommends that Olga's Motion be granted in part; that Olga be awarded $110,789.37 in attorney's fees and $9,830.77 in costs; that Olga be ordered to submit a calculation of the amount of prejudgment interest to which she is entitled within 10 days of the undersigned's ruling; and that Teresa's Motion be denied. (Id. at 19). Olga filed an objection to the Report and Recommendation on November 4, 2016. (Doc. # 215). Michelle and Teresa filed a reply to Olga's objection on November 22, 2016. (Doc. # 218). The matters under review are now ripe for consideration.

## II.   **Legal Standard**

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's Report and Recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). In the absence of specific objections, there is no requirement that a district judge review factual findings *de novo*, Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993), and the court may accept, reject or modify, in whole or in part, the findings and recommendations. 28 U.S.C. § 636(b)(1)(C). The district judge reviews legal conclusions *de novo*, even in the absence of an objection. See Cooper-Houston v. S. Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); Castro Bobadilla v. Reno, 826 F. Supp. 1428, 1431-32 (S.D. Fla. 1993), aff'd, 28 F.3d 116 (11th Cir. 1994) (Table).

## III. Analysis

### A. Attorney's Fees

When jurisdiction is based on 28 U.S.C. § 1332, motions for attorney's fees are governed by the law of the state in which the federal court sits. Hegel v. First Liberty Ins. Corp., No. 8:12-cv-1161-T-17MAP, 2014 WL 5473185, at *2 (M.D. Fla. Oct. 23, 2014) (citing Ins. Co. of N. Am. v. Lexow, 937 F.2d 569, 572 (11th Cir. 1991)); Kearney v. Auto-Owners Ins.

Co., 713 F. Supp. 2d 1369, 1373 (M.D. Fla. 2010). Count I of Olga's Amended Complaint was brought under Section 415.1111, Fla. Stat., which provides: "[a] vulnerable adult who has been . . . exploited as specified in this chapter has a cause of action against any perpetrator . . . . A party who prevails in any such action may be entitled to recover reasonable attorney's fees, costs of the action, and damages."

Because the jury returned a verdict in favor of Olga as to Count I, but not as to Counts II and IV, the Court must first decide who the prevailing party is before calculating the amount of fees to be awarded. In addition, the Court must also address the factors used in awarding fees prior to determining the amount to be awarded.

## 1. Prevailing Party

"[T]he party prevailing on the significant issues in the litigation is the party that should be considered the prevailing party for attorney's fees." River Bridge v. Am. Somax Ventures, 76 So. 3d 986, 989 (Fla. 4th DCA 2011) (quoting Moritz v. Hoyt Enters., Inc., 604 So. 2d 807, 810 (Fla. 1992)) (alteration in original). In a multi-count complaint, where the counts are "alternative theories of liability for the same wrong . . . .[,] there can only be one prevailing party . . . ." Anglia Jacs & Co. v. Dubin, 830 So.

8

2d 169, 171 (Fla. 4th DCA 2002). "[C]laims are separate and distinct when they could support an independent action . . . ." Avatar Dev. Corp. v. DePani Constr., Inc., 883 So. 2d 344, 346 (Fla. 4th DCA 2004) (citing Folta v. Bolton, 493 So. 2d 440, 442 (Fla. 1986) (claims were separate and distinct because they "involved different medical providers performing different procedures")).

Judge Porcelli found Counts I, II, III, and IV to be alternative legal theories. (Doc. # 214 at 5). Olga, the only party to file an objection to the Report and Recommendation, does not dispute this finding. (Doc. # 215). After review, the Court agrees with Judge Porcelli's finding. Of the Counts that were tried (Counts I, II, and IV), all were premised on the same basic facts; namely, the events that took place while Olga lived in Oklahoma with respect to the execution of several estate planning documents and involved the same core group of people. Thus, because Olga prevailed as to Count I, she is the prevailing party for purposes of attorney's fees.

### 2. **Factors Guiding the Exercise of Discretion**

The parties disagree as to the factors the Court should consider in exercising its discretionary authority to award attorney's fees. Olga posits the Court should apply the Christiansburg Garment Co. v. Equal Employment Opportunity

9

Commission, 434 U.S. 412, 416 (1978), standard, whereas Michelle and Teresa argue the Court should apply the factors listed in Blanco v. Transatlantic Bank, No. 07-20303-CIV, 2009 WL 2762361, at *2 (S.D. Fla. Aug. 31, 2009).

Upon review, the Court finds Olga's argument to be unpersuasive. The thrust of Olga's argument for why this Court should adopt the Christiansburg standard is borne upon public policy considerations. According to Olga, Florida's legislature was motivated by similar considerations when it provided for an award of attorney's fees on a discretionary basis under the Adult Protective Services Act, Fla. Stat. §§ 415.101-415.113, as it was when it provided for an award of attorney's fees on a discretionary basis under the Florida Civil Rights Act, Fla. Stat. §§ 760.01-760.11. Although Olga correctly notes that Florida courts apply the guidelines used for awarding attorney's fees in Title VII actions (i.e., the Christiansburg standard), see McCoy v. Pinellas Cty., 920 So. 2d 1260, 1261-62 (Fla. 2d DCA 2006), her analysis omits a critical distinction between the Adult Protective Services Act and the Florida Civil Rights Act.

In providing for a discretionary award of attorney's fees to a prevailing party in an action brought under the Florida Civil Rights Act, the Florida legislature explicitly

10

stated its "intent . . . that [the] provision for attorney's fees be interpreted in a manner consistent with federal case law involving a Title VII action." Fla. Stat. § 760.11(5). In stark contrast, the Florida legislature did not express by any means its intention for the Adult Protective Services Act's attorney's fee provision to be interpreted in a manner consistent with federal case law involving an award of attorney's fees in a Title VII action. Fla. Stat. § 415.1111 ("A party who prevails in any such action may be entitled to recover reasonable attorney's fees, costs of the action, and damages.").

In light of this difference between the two attorney's fees provisions, the Court finds the analysis in Humane Society of Broward County v. Florida Humane Society, 951 So. 2d 966, 968-971 (Fla. 4th DCA 2007), instructive. In that case, the plaintiff-turned-appellant argued the court should shield losing plaintiffs from liability for attorney's fees in actions brought under Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.2105(1), unless the Christiansburg standard for a prevailing defendant was satisfied. Id. at 968. In furtherance of its argument, the appellant "point[ed] to Florida's Anti-Trust Act," which has "essentially the same purpose" as FDUTPA, in contending that

the actions should be comparable for purposes of awarding attorney's fees. Id. The court, however, "reject[ed] th[e] argument because the Anti-Trust Act contains a specific standard for the award of fees to a prevailing defendant, while FDUTPA does not." Id.

The court further noted that, under Florida law, "[w]hen construing statutes, a court ascertains and gives effect to the intent of the legislature. . . . [And] [i]n determining that intent . . . [a court] look[s] first to the statute's plain meaning. . . . [W]hen the language of the statute is clear and unambiguous . . ., there is no occasion for resorting to" rules of statutory construction such as legislative intent. Id. at 970. Before providing a list of factors a trial court "might" consider, the court observed that "[t]o apply Christiansburg to [FDUTPA's attorney's fee provision] . . . would be to rewrite the statute . . . . [and] steal from the trial court the very discretion that the legislature has allowed in determining FDUTPA fee awards." Id. at 971. The court then listed seven non-exhaustive factors a trial court "might" consider:

> (1) the scope and history of the litigation;
> (2) the ability of the opposing party to satisfy an award of fees;

(3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;
(4) the merits of the respective positions-including the degree of the opposing party's culpability or bad faith;
(5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;
(6) whether the defense raised a defense mainly to frustrate or stall;
(7) whether the claim brought was to resolve a significant legal question under FDUTPA law.

Id. at 971-72 (citation omitted).

The reasoning of the court in Humane Society of Broward County applies with equal force here. Olga argues the Court should apply the Christiansburg standard to this action brought under the Adult Protective Services Act because the Act was passed to protect similar interests as the Florida Civil Rights Act. While the latter is—by express command—interpreted in accordance with Title VII decisional law vis-à-vis attorney's fees (i.e., the Christiansburg standard), Florida's legislature expressed no such intention with respect to the Adult Protective Services Act. Thus, "[t]o apply Christiansburg to [the Adult Protective Services Act's attorney's fee provision] . . . would be to rewrite the statute . . . . [and] steal from the trial court the very discretion that the legislature has allowed in determining [Section 415.1111] fee awards." Id. at 971.

Notably, many of the factors listed in <u>Humane Society of Broward County</u>, 951 So. 2d at 971-72, overlap with the factors listed in <u>Blanco</u>, which are

> (1) the scope and history of the litigation, including whether the Plaintiff continued to prosecute the action despite the presence of an efficient resolution to the case; (2) the parties' wealth disparity; (3) whether an award of fees would frustrate the FWA's remedial purpose by deterring worthy claimants; (4) whether the opposing party's case was meritorious or frivolous; and (5) whether the opposing party acted in good or bad faith.

<u>Blanco</u>, 2009 WL 2762361, at *2.[3] Judge Porcelli found that "under the *Blanco* factors, Olga should be entitled to reasonable fees and costs because a denial of such an award would most certainly frustrate the remedial purpose of the statute." (Doc. # 214 at 6). Olga, the only party to file an objection to the Report and Recommendation, does not object to this finding. (Doc. # 215 at 3) ("the Report and Recommendation correctly found that Olga is entitled to fees . . ."). After considering the factors listed in <u>Blanco</u>, the undersigned agrees that an award of attorney's fees to Olga under Section 415.1111 is appropriate.

---

[3] This overlap is unsurprising given the court in <u>Blanco</u> derived its set of factors from, in part, <u>Humane Society of Broward</u>. <u>Blanco</u>, 2009 WL 2762361, at *2 n.4.

### 3. Lodestar Calculation and Reduction

State law, here Florida law, governs the calculation of attorney's fees; however, "[t]he Florida Supreme Court . . . has turned the law full circle by adopting the federal lodestar method . . . to determine what constitutes 'reasonable' attorney's fees." Kearney, 713 F. Supp. 2d at 1374. "The starting point for determining the amount of a 'reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.' . . . The product of these two figures is the lodestar and there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008) (citations omitted). "After the lodestar is determined . . ., the court must next consider the necessity of an adjustment for results obtained." Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988). "When the number of compensable hours and the hourly rate are reasonable, a downward adjustment to the lodestar is merited only if the prevailing party was partially successful in its efforts." Bivins, 548 F.3d at 1351 (citation omitted).

"A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the

litigation as a whole. . . . Where all theories derive from a common core of operative facts," as is the case here, "the focus should be on the significance of overall results as a function of total reasonable hours. . . . It is improper to make the reduction based on a simple ratio of successful issues to issues raised." Norman, 836 F.2d at 1302 (citations omitted). "The most critical factor is the degree of success obtained. . . . When considering this factor, we must compare the amount of damages sought to the amount awarded." Gray ex rel. Alexander v. Bostic, 720 F.3d 887, 894 (11th Cir. 2013) (citation omitted).  A court may, as a matter of law, make a discrepancy between the amount awarded in damages and the amount sought its "'primary consideration' for evaluating [a prevailing party's] success." Mock v. Bell Helicopter Textron, Inc., 456 Fed. Appx. 799, 802 (11th Cir. 2012) (quoting Farrar v. Hobby, 506 U.S. 103, 114 (1992), and citing Popham v. City of Kennesaw, 820 F.2d 1570, 1580-81 (11th Cir. 1987)).

Florida courts follow an approach that accords with the approach taken by federal courts, described above, with respect to considering damages awarded versus damages sought in calculating the total attorney's fee award. Jomar Props., L.L.C. v. Bayview Constr. Corp., 154 So. 3d 515, 519 (Fla.

4th DCA 2015) (citing <u>Shipwatch Dev. Corp. v. Salmon</u>, 646 So. 2d 838, 839 (Fla. 1st DCA 1994); <u>Fashion Tile & Marble, Inc. v. Alpha One Constr. Assocs., Inc.</u>, 532 So. 2d 1306, 1309 (Fla. 2d DCA 1988)).

Turning to the lodestar, Olga objects to the Report and Recommendation insofar as she takes issue with the fact that the Report and Recommendation does not explicitly determine the reasonable hourly rate of or the number of hours reasonably expended by Olga's counsel. (Doc. # 215 at 4-6). Olga also objects on the grounds that the Report and Recommendation improperly (1) reduced the fees based on the amount of damages recovered and (2) factored Olga's success as to the alternative legal theories into the determination of fees. (<u>Id.</u> at 7-10). Furthermore, Olga argues the Report and Recommendation (1) erred in finding that she prolonged the litigation and (2) would frustrate the intent of Florida's legislature by awarding only $110,789.37, rather than the $332,368.10 she seeks, in fees. (<u>Id.</u> at 11-14).

The Report and Recommendation summarizes Judge Porcelli's finding as "an across-the-board reduction proportionate to the amount of Olga's success." (Doc. # 214 at 8). The term "across-the-board" describes one step in the process of calculating the lodestar; more accurately, it

17

describes one method by which a district court may reduce the number of hours claimed when that number is unreasonably high. See, e.g., Mock, 456 Fed. Appx. at 802 (describing reduction in total hours billed as an "across-the-board cut"); Bivins v. Wrap it Up, Inc., 380 Fed. Appx. 888, 891 (11th Cir. 2010) (Bivins II) ("The district court considered the numbers of hours . . . claimed, and, instead of conducting an hour-by-hour analysis . . ., the court applied an 85-percent reduction across the board."); Bivins, 548 F.3d at 1350 ("When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut.").

In contrast, the term "adjustment" is used to describe a reduction in the amount to be awarded as fees after the lodestar has been calculated. Bivins, 548 F.3d at 1352 ("[T]he district court erred in adjusting the lodestar downward . . . . Such an adjustment is warranted only if the plaintiff was partially successful on his claims."); Norman, 836 F.2d at 1302 ("After the lodestar is determined . . ., the court must next consider the necessity of an adjustment for results obtained."). It is only when considering whether an adjustment is appropriate, and by what measure, that a

district court evaluates "the significance of overall results as a function of total reasonable hours." Id. ("In so doing, the court . . . may simply reduce the award by some proportion."); see also Mock, 456 Fed. Appx. at 802 ("permitting the district court to compare 'the amount of damages a plaintiff requested with the amount . . . received' as a basis for finding partial success and reducing the fee award" (quoting Popham, 820 F.2d at 1580-81)).

While use of the phrase "across-the-board reduction" seems to suggest a conflation of calculating the lodestar with adjusting the lodestar, the substantive reasons articulated in the Report and Recommendation demonstrate that Judge Porcelli properly adjusted the lodestar downward to compensate for Olga's partial success in the action as a whole. When the first-filed action was still pending in state court, Olga filed the instant action against Michelle and Teresa, seeking to recover the fees incurred in the first-filed action as damages under an ill-established state-law doctrine, Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1261 (11th Cir. 2014) ("We therefore question how well-established the doctrine is in Florida."), via causes of action designed to protect vulnerable, Fla. Stat. § 415.1111, and elderly, Fla. Stat. § 772.11, adults. Olga elected this

course of action rather than seeing the first-filed action through and attempting to recover fees in the action that produced them; an option even her own counsel previously conceded was available (Doc. # 218-3, Motion to Dismiss Transcript, November 25, 2014, at 24:5-25:2).

Furthermore, Olga was not seeking merely to recover the damages incurred in the form of attorney's fees from the first-filed action. Instead, including a cause of action under Section 772.11, Fla. Stat., Olga sought to recover treble damages. In so doing, Olga expanded the monetary scope of the present action beyond the fees incurred in the first-filed action. Olga now argues that "there is no legal justification for reducing fees" by some proportion when a plaintiff is successful as to only some claims, and focuses on "the nearly 100% success she had on" Count I. (Doc. # 215 at 4, 11). Olga was, to be sure, "nearly 100% success[ful]" as to Count I, but that was not the only Count that went to trial: Counts II and IV also went to trial. Olga prevailed only as to Count I, though. Her attempt to limit the Court's analysis to her success on Count I is myopic in light of cases such as Norman, 836 F.2d at 1302, Gray ex rel. Alexander, 720 F.3d at 894, Mock, 456 Fed. Appx. at 802, and Jomar Properties, 154 So. 3d at 519. Moreover, Olga's argument that

20

there is no legal justification for reducing fees by some proportion for a partially successful plaintiff is belied by the cases just cited.

Olga went to trial on three Counts, winning on one and losing as to the other two. As a result, Olga recovered $159,587.05. (Doc. # 186). But, Olga sought much more than that. Indeed, if Olga had prevailed on Count II, she could have pursued treble damages, which could have totaled as much as $495,000 (Doc. # 218-2). Thus, taking the damages awarded as a percentage of the damages sought, Gray ex rel. Alexander, 720 F.3d at 894, Olga was not nearly 100% successful as she claims; rather, she recovered 32.24% of the total sum she sought. In other words, a difference in the amount of $335,412.95 exists between what Olga recovered and what she sought to recover. Although Olga argues the Court should not consider her failure to recover as to Counts II and IV in deciding whether to adjust the lodestar downward (Doc. # 215 at 9-11), the Court finds the argument unpersuasive. In effect, what Olga attempts to do is use the inexorably interwoven nature of her alternative legal theories as both a sword to seek all attorney's fee incurred for prosecuting the entire action and a shield to shelter her from the effects of her partial victory. Equity, however, militates against

allowing such a dual purpose, as do, for example, Norman, 836 F.2d at 1302, Gray ex rel. Alexander, 720 F.3d at 894, Mock, 456 Fed. Appx. at 802, and Jomar Properties, 154 So. 3d at 519.

Thus, Judge Porcelli's recommendation to adjust the lodestar downward in order to make it proportionate to Olga's success, and thereby reasonable, accords with applicable case law. Judge Porcelli's recommendation is reasonable and the Court agrees a downward adjustment is warranted in light of the facts and history of this case.

After reviewing the Motions, related briefing, the Report and Recommendation, Olga's objection, and Michelle and Teresa's reply, the Court finds that an award of $110,789.37 in attorney's fees is reasonable and satisfies both equity and the legislative intent for enacting the statute at issue. In making its determination, the Court is mindful that "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit . . . ." Fox v. Vice, 563 U.S. 826, 838 (2011). An award of $110,789.37 does just that.

B.    Costs

"Federal Rule of Civil Procedure 54(d)(1) prescribes an award of costs for a prevailing party unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise." Tempay Inc. v. Biltres Staffing of Tampa Bay, LLC, No. 8:11-cv-2732-T-27AEP, 2013 WL 6145533, at *2 (M.D. Fla. Nov. 21, 2013); see Durden v. Citicorp Tr. Bank, FSB, No. 3:07-cv-974-J-34JRK, 2010 WL 2105921, at *1 (M.D. Fla. Apr. 26, 2010)(stating that Fed. R. Civ. P. 54 establishes a strong presumption that costs should be awarded unless the district court decides otherwise) (citing Chapman v. Al Transp., 229 F.3d 1012, 1038 (11th Cir. 2000)). However, "the district court's discretion not to award the full amount of costs incurred by the prevailing party is not unfettered;" the district court must articulate a sound reason for not awarding full costs. Chapman, 229 F.3d at 1039 (internal citations omitted).

Specifically, pursuant to 28 U.S.C. § 1920, the following may be taxed as costs:

(1)   Fees of the clerk and marshal;
(2)   Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3)   Fees and disbursements for printing and witnesses;

23

      (4)  Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

      (5)  Docket fees under [28 U.S.C. § 1923]; [and]

      (6)  Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

28 U.S.C. § 1920; see Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 440-41 (1987), superseded on other grounds by 42 U.S.C. § 1988(c) (finding that 28 U.S.C. § 1920 defines the term "costs" as used in Rule 54(d) and enumerates the expenses that a federal court may tax as a cost under the discretionary authority granted in Rule 54(d)). The party seeking an award of costs or expenses bears the burden of submitting a request that enables a court to determine what costs or expenses were incurred by the party and the party's entitlement to an award of those costs or expenses. Loranger v. Stierheim, 10 F.3d 776, 784 (11th Cir. 1994).

Judge Porcelli recommends that Olga be awarded $9,830.77 in costs. (Doc. # 214 at 13). Neither party objected to this portion of the Report and Recommendation. After reviewing the analysis (Id. at 10-13), the Court agrees with the Report and Recommendation and awards $9,830.77 in costs to Olga.

C.    <u>**Prejudgment Interest**</u>

The Report and Recommendation further recommends that Olga file a prejudgment interest calculation for the Court's approval within 10 days of this Order. The Court agrees. Therefore, Olga is directed to file a prejudgment interest calculation for the Court's approval by December 27, 2016. <u>See</u> Fed. R. Civ. P. 6(a)(1)(C), (a)(5), (a)(6).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)    Plaintiff Olga T. Grasso's objection (Doc. # 215) is **OVERRULED.**

(2)    The Report and Recommendation entered by the Honorable Anthony E. Porcelli, United States Magistrate Judge, (Doc. # 214) is **ACCEPTED.**

(3)    Plaintiff Olga T. Grasso's Motion for Attorney's Fees, Costs, and Prejudgment Interest (Doc. # 187) is **GRANTED IN PART AND DENIED IN PART.**

(4)    Defendant Teresa Grasso's Motion for Entitlement to Attorney's Fees (Doc. # 191) is **DENIED.**

(5)    The Court awards $120,620.14, representing $110,789.37 in attorney's fees and $9,830.77 in costs, to Plaintiff Olga T. Grasso.

(6)   Plaintiff Olga T. Grasso shall file a supplemental brief

with the Court calculating the amount of prejudgment

interest to which she is entitled by December 27, 2016.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this

15th day of December, 2016.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE